UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

ISAIAH SMITH,

                Plaintiff,

  -v-                                                    No. 14CV443-LTS-KNF

THE CITY OF NEW YORK
and CAPTAIN DAUNA WEBB,

                Defendants.
-------------------------------------------------------x

## MEMORANDUM Opinion and ORDER

        Pro se plaintiff Isaiah Smith ("Plaintiff") brings this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants the City of New York and Captain Dauna Webb (collectively "Defendants"), alleging interference with his regular and legal mail. (Compl. (docket entry no. 2).) Defendants moved to dismiss the Complaint in its entirety, for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Defendants' motion is granted in part and denied in part.

### BACKGROUND

        The following facts are taken from the Complaint and are presumed to be true for the purposes of this motion practice.

        Plaintiff was at all relevant times a "court-ordered lock-down" inmate at Manhattan Detention Complex ("MDC"). On October 8, 2013, MDC Officer Vaga brought six pieces of opened mail to Plaintiff's cell. Plaintiff asked Officer Vaga who had opened his mail, and she replied that Defendant Webb had opened the mail. The next day, Plaintiff confronted

Defendant Webb about his mail, and Defendant Webb told him that she could open his mail "as long as [he] was in lock-up." (Compl., ¶ II. D.) Thereafter, Plaintiff continued to receive opened mail. (Id.) Three of the pieces of opened mail were legal mail from his attorneys and the Family Court. (Id., at pg. 4, Inmate Grievance and Request Program ("IGRP") Statement Form.[1])

On October 10, 2013, Plaintiff submitted an Inmate Grievance and Request Program statement. (Compl., at pg. 4.) The Inmate Grievance Review Committee ("IGRC") responded that, "even though [Plaintiff has] no mail restrictions, as per MDC security, all mail for court ordered lock-down inmates is read in order to ensure that it is not violating the court order." (Compl., at pg. 11, IGRC Disposition Form.) In addition, "though [the mail] may be addressed from the attorney, it has to be verified that it is actually from the attorney or legal mail and not from any individual." (Id.) Plaintiff appealed to the commanding officer, who provided a similar response. ("Mail must be read to ensure that [it] is not from another inmate or violating a court order." (Compl., at pg. 6, Commanding Officer's Disposition Form.)) Plaintiff further appealed to the Central Office Review Committee ("CORC"). On January 10, 2014, the CORC accepted Plaintiff's request, and ordered that Plaintiff's mail "would be opened in his presence." (Compl., at pg. 10, CORC Disposition.)

Plaintiff also alleges that "staff in charge of processing inmate mail has occasionally delayed, sabotaged, and trashed [Plaintiff's] out-going mail." (Compl., ¶ V.) Plaintiff sent out a letter each to his foster care worker, William Sanchez, and to his Family Court attorney, Kristine Marshall, on November 16, 2013, and December 16, 2013, respectively.

---

[1] The IGRP Statement Form and other written instruments that are attached to the complaint as exhibits are treated as part of the pleading. See Fed. R. Civ. Pro. 10(c).

(Compl., at pg. 12, IGRP Statement Form.)  The letters were in response to previous correspondence about the adoption of Plaintiff's two children.  (Compl., at pgs. 14, 15.)  William Sanchez informed Plaintiff during a family visit on November 26, 2013 that he had not received his letter.  (Compl., at pg. 12.)  On December 27, 2013, Plaintiff received a letter from Kristine Marshall dated, December 19, 2013, indicating that she had not received the letter he had sent out on December 16, 2013.  (Compl., at pgs. 12, 13.)  Plaintiff asserts that he had written "well in advance" of January 16, 2014, which was the scheduled court date for finalization of the voluntary surrender of his children, "to make a few changes to the terms and conditions so that [he] could better interact with [his] two children, but the letters never left the facility."  (Compl., ¶ V.)

On December 28, 2013, Plaintiff filed an IGRP statement form requesting that his letter to his Family Court attorney, Kristine Marshall, be personally mailed by prison staff.  (Compl., at pg. 12.)  In response, the IGRP forwarded the letter to the MDC Legal Aid office on or about January 9, 2013.  The MDC Security Captain stated that all mail received by staff would be sent.  (Compl., at pg. 7, IGRP Disposition Form.)  The Complaint does not indicate whether the letter reached Kristine Marshall before the court date of January 16, 2014, nor does it indicate the outcome of those proceedings.

Plaintiff seeks to recover damages, alleging that he has suffered mental and emotional harm as a result of the interference with his mail.

## DISCUSSION

In deciding a motion to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in the plaintiff's favor.  McCarthy v. Dun & Bradstreet Corp., 482 F.3d

184, 191 (2d Cir. 2007); S.E.C. v. Lyon, 529 F. Supp. 2d 444, 449 (S.D.N.Y. 2008). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."). To state a plausible claim to relief, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

The court must interpret the factual allegations of a pro se complaint "to raise the strongest arguments that they suggest." Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013) (citing Harris v. City of New York, 607 F.3d 18, 24 (2d Cir. 2010)). Nevertheless, the liberal reading accorded to pro se pleadings "is not without limits, and all normal rules of pleading are not absolutely suspended." Stinson v. Sheriff's Dep't., 499 F. Supp. 259, 262 (S.D.N.Y. 1980).

Although litigants generally may not constructively amend their complaints by raising new factual allegations in their opposition papers, see, e.g., Rosado v. Herard, No. 12CV8943-PGG-FM, 2014 WL 1303513, at *11 (S.D.N.Y. Mar. 25, 2014), courts often consider such assertions when made by pro se litigants, see, e.g., id.; Rodriguez v. Rodriguez, No. 10CV00891-LGS, 2013 WL 4779639, at *1 (S.D.N.Y. July 8, 2013).

Plaintiff's Civil Rights Claims

Plaintiff brings his claims pursuant to 42 U.S.C. § 1983, which provides that:

[e]very person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

42 U.S.C.S. § 1983 (LexisNexis 2014).

Liberally construed, Plaintiff's complaint alleges that Defendants violated his First Amendment rights by denying him access to the courts and by interfering with his transmission and receipt of mail.

Denial of Access to the Courts as a Result of Legal Mail Tampering

Prisoners have a constitutional right of access to the courts and, where there is a deliberate and malicious interference with that right, may seek redress from the court. Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003). To state a valid Section 1983 claim for denial of access to the courts due to interference with legal mail, an inmate must allege that a defendant's deliberate and malicious interference actually impeded his access to the court or prejudiced an existing action. Cancel v. Goord, No. 00CV2042, 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001); see also Lewis v. Casey, 518 U.S. 343, 349 (1996).

Defendants argue that the constitutional right of access to the courts in the prison context is limited to inmates' challenges to their "sentences, directly or collaterally, and . . . [litigation] to challenge the conditions of their confinement" (Mem. of Law in Supp. of Defs.' Mot. to Dismiss the Compl. ("Defs.' Mem.") (Dkt. 20), at pg. 5 (quoting Lewis, 518 U.S. at 355)), and this right does not cover Plaintiff's access to Family Court proceedings. However, "there is at least a question as to whether an inmate's right to access to the courts is so confined in the context of interference." Montanez v. Cuoco, 361 F. App'x 291, 293 (2d Cir. 2010) (collecting cases). Although the Second Circuit has not addressed whether the right of access to the courts includes the right to access family courts, the "apparent trend in the Second Circuit is to expand the right of access to the courts beyond the circumstances outlined in Lewis." Weller v. Dykeman, No. 10CV181, 2012 WL 872398, at *3 (D. Vt. Mar. 14, 2012) (collecting cases).

Plaintiff's complaint is not deficient merely because it asserts a claim relating to communications in connection with Family Court proceedings rather than his criminal case or litigation regarding his conditions of confinement. He has not, however, alleged any facts demonstrating that he suffered any prejudice by reason of any of the alleged interference with his mail.

Plaintiff alleges that "staff in charge of processing inmate mail has occasionally delayed, sabotaged, and trashed [his] out-going mail." (Compl., ¶ V.) To show actual injury, Plaintiff must allege facts demonstrating that he was prejudiced in his ongoing legal proceedings. A mere "delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." Jermosen v. Coughlin, 877 F. Supp. 864, 871 (S.D.N.Y. 1995) (citing Jones v. Smith, 784 F.2d 149, 151–52 (2d Cir. 1986)); see also Sheppard v. Lee, No. 10CV6696, 2011 WL 6399516, at *2 (S.D.N.Y. Dec. 20, 2011) (holding that, because plaintiff's motion in his other proceedings was dismissed on other grounds, missing a court deadline due to delayed outgoing legal mail did not constitute actual injury).

Plaintiff alleges that he wrote to his Family Court lawyer "well in advance" of the court date, January 16, 2014, on which date "[his] parental rights w[ould] end," to stipulate terms and conditions regarding his future interactions with his two children, but "the letters never left the facility." (Compl., ¶ V.) He admits, however, that he was able to send out his response to his Family Court lawyer by the end of December, after his mail was forwarded to his Family Court attorney following his internal grievance process. (Compl., at pg. 7.) Plaintiff also alleges that he received his legal mail opened. He alleges three specific instances where he received his legal mail opened: (1) October 8, 2013, when he received 3 pieces of legal mail opened by

Defendant Webb (Compl., ¶ II. D); (2) December 27, 2013, when he received an opened letter from his Family Court attorney, Kristine Marshall (Aff. of Isaiah Smith in Opp'n of Mot. to Dismiss the Compl. ("Pl. Aff.") (Dkt. 27), at pg. 13); and (3) May 1, 2014, when he received an opened letter from Elizabeth Emmons, an attorney from the Legal Aid Society, regarding his "appeal from [his] registration designation in the Supreme Court, New York County" (Pl. Aff., at pgs. 6, 17).

Plaintiff's allegations do not demonstrate that he suffered any prejudice, other than mere delay, to his ongoing legal proceedings, or to a legal action that he sought to pursue, as a result of interference with his outgoing or incoming legal mail. Therefore, Plaintiff does not plausibly state a Section 1983 claim for denial of access to the courts. Accordingly, his claim under the First Amendment for denial of access to the courts will be dismissed with leave to amend the complaint to add factual allegations demonstrating that Defendants' interference with Plaintiff's legal mail injured him by prejudicing him in a legal action. See, e.g., Cancel, 2001 WL 303713 at *4 (dismissing Plaintiff's denial of access to the courts claim with leave to amend); Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013) (A pro se litigant should be afforded at least one opportunity to amend his complaint if "a liberal reading of the complaint gives any indication that a valid claim might be stated."); Bobal v. Rensselaer Polytechnic Inst., 916 F.2d 759, 763 (2d Cir. 1990) (a pro se litigant should be afforded leave to amend his complaint "fairly freely") (internal quotation marks and citation omitted).

Violation of the First Amendment Right to Free Speech by Interference with Mail

A prisoner's right to the free flow of incoming and outgoing mail is also protected by the First Amendment. Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003). To establish a violation of this right, the prisoner must show that the interference with his mail was both regular

and unjustified. Antrobus v. City of New York, No. 11CV2524-RA, 2014 WL 1285648, at *4 (S.D.N.Y. Mar. 27, 2014); see also Goord, 320 F.3d at 351. Restrictions on prisoners' mail are justified only if they "further[ ] one or more of the substantial governmental interests of security, order, and rehabilitation . . . [and] must be no greater than is necessary or essential to the protection of the particular governmental interest involved." Goord, 320 F.3d at 351 (citing Washington v. James, 782 F.2d 1134, 1139 (2d Cir. 1986) (internal citations and quotation marks omitted).

"In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail." Goord, 320 F.3d at 351; see also Thornburgh v. Abbott, 490 U.S. 401, 413 (1989). "'The First Amendment protects prisoners' access to mail directly, unlike the right of access to courts, which protects prisoners' access to mail only derivatively and with respect to given claims.'" Antrobus, 2014 WL 1285648, at *4 (quoting Bellezza v. Holland, No. 09CV8434, 2011 WL 2848141, at *6 (S.D.N.Y. July 12, 2011)). Therefore it is unnecessary to allege "actual injury" when asserting a violation of prisoners' right to the free flow of mail. Antrobus, 2014 WL 1285648, at *4. However, where incidents of tampering are few, specific allegations of invidious intent or of actual harm are generally required. Goord, 320 F.3d at 351.

### Outgoing Mail

Plaintiff's conclusory allegation that prison staff has occasionally delayed, sabotaged, and trashed his outgoing mail does not adequately allege a "regular and unjustifiable interference." Antrobus, 2014 WL 1285648 at *4. The mere fact that his Family Court attorney and foster care worker each did not receive his mail on a single occasion does not raise a

plausible inference that prison staff were regularly or maliciously interfering with his outgoing mail. See Shepherd v. Fisher, No. 08CV9297, 2011 WL 3278966, at *3 (S.D.N.Y. July 27, 2011) (holding that three alleged instances of interference with legal mail were insufficient to allege an underlying "ongoing practice"). Nor has Plaintiff alleged facts indicative of actual harm.

In his affirmation in opposition to the motion, Plaintiff made an additional allegation – that MDC policy requires lock-down inmates to submit outgoing mail unsealed. He alleges that he was informed by prison officers that "all court-ordered lock down inmates are required to submit any out-going mail unsealed for security purposes," and that he complied with the policy. (Pl. Aff., at pgs. 11–12.) If Plaintiff amends his complaint, he may include factual allegations and an additional First Amendment claim relating to this alleged policy and its effect on him.

Incoming Legal Mail

"[A] prisoner has a right to be present when his legal mail is opened," however "an isolated incident of mail tampering is usually insufficient to establish a constitutional violation." Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (citing Wolff v. McDonnell, 418 U.S. 539, 574-76 (1974)). "Rather, the inmate must show that prison officials 'regularly and unjustifiably interfered with the incoming legal mail.'" Goord, 320 F.3d at 351 (quoting Cancel v. Goord, No. 00CV2042, 2001 WL 303713, at *6 (S.D.N.Y. Mar. 29, 2001)).

Plaintiff alleges that, during his confrontation with Defendant Webb about his opened incoming mail, Defendant Webb replied that "she could open [Plaintiff's] mail as long as [Plaintiff] was in lock-up." (Compl., ¶ II. D.) Thereafter, Plaintiff continued to receive opened mail. Id. During his internal grievance process, both the IGRC and the commanding officer

confirmed that all mail for court ordered lock-down inmates, including Plaintiff's mail, is read for security reasons. It can be plausibly inferred that this prison practice of opening Plaintiff's mail outside his presence continued until the CORC ordered that Plaintiff's mail be opened in his presence. Read together with specific factual allegations of the two separate incidents on October 8, 2013 and December 27, 2013, when he received opened legal mail, Plaintiff has sufficiently alleged that interference with his legal mail occurred on a "regular" basis. See Washington, 782 F.2d at 1139 (holding that although pro se prisoner specifically described only two instances of mail interference, he had adequately alleged a "continuing activity"); Bellezza, 2011 WL 2848141, at *6-7 (holding that plaintiff stated a First Amendment claim where he alleged that the defendants regularly read his incoming mail and withheld it).

    Defendants have not attempted to provide a specific justification for the alleged interference with legal mail. (Defs.' Mem., at pgs. 17-18.) In relation to Plaintiff's claim of interference with non-legal mail, Defendants proffer two arguments that opening all mail for court-ordered lock-down inmates is justified by "legitimate penological interests." Defendants proffer that such opening is necessary (1) to "ensure that the mail does not violate the individual inmate's court order that limits their communication privileges," and (2) to "ensure that the mail is actually for the inmate who the mail is addressed to and not for another court-ordered lock-down inmate who has limited or no mail privileges." (Defs.' Mem., at 16.) Even if the Court were to credit Defendants' representations at this pleading stage, however, neither is sufficient to defeat Plaintiff's incoming legal mail interference claim. Nothing in the record indicates that there is any court order restricting Plaintiff's receipt of mail; the order supplied to the Court only restricts Plaintiff's outgoing telephone privileges.

Therefore, the inspection of Plaintiff's mail outside of his presence does not appear to be "reasonably related" to the interest of ensuring that Plaintiff is not violating his court order. See Thornburgh v. Abbott, 490 U.S. 401, 409 (1989) (right to free flow of mail may be regulated by prison officials if the regulations are "reasonably related to legitimate penological interests") (internal citation and quotation marks omitted)). Defendants' second contention, that the policy is necessary to ensure that the mail is for Plaintiff and not another court-ordered lock-down inmate, does not constitute a sufficient justification for the prison to inspect legal mail addressed to Plaintiff outside of Plaintiff's presence. While prison officials may open ordinary mail outside of an inmates' presence to check for contraband, a prisoner must be present when legal mail (clearly marked as such) is opened by prison officials. Word v. Croce, 169 F. Supp. 2d 219, 228 (S.D.N.Y. 2001) (citing Standley v. Lyder, No. 99CV4711, 2001 WL 225035, at *2 (S.D.N.Y. Mar. 7, 2001)); see also Cancel, 2001 WL 303713 at *6 (stating that, because legal mail is entitled to a higher degree of protection than non-legal mail, interference with legal mail on a regular basis "must be supported by a legitimate penological interest other than mere general security concerns which permit interference with regular mail"). Here, the name and job title of the sender ("Kristine M. Marshall, Esq., Attorney at Law") and the name and identification number of the intended recipient ("Isaiah Smith – ID #: 4411006187") could be seen from the outside of the envelope of Plaintiff's legal mail. (Pl. Aff., at pg. 13.) Therefore, "[a]bsent other prison concerns with regards to a particular inmate," Defendants' proffered rationale merely constitutes a general security interest insufficient to justify an interference with incoming legal mail. See Cancel, 2001 WL 303713 at *6.

Accordingly, Defendants' motion to dismiss Plaintiff's First Amendment claim in relation to his right to be present during opening of his legal mail is denied. See Acevedo v.

Fischer, No. 12CV6866, 2014 WL 5015470, at *4 (S.D.N.Y. Sept. 29, 2014) ("Without a better developed record, the Court cannot say that any alleged mail watch was necessarily justified as a matter of law."); Knight v. Keane, 247 F. Supp. 2d 379, 384 (S.D.N.Y. 2002) (declining to dismiss plaintiff"s mail watch claim on a Rule 12(b)(6) motion and explaining that "the record evidence is insufficient to establish that inspection of plaintiff's mail was based on good cause").

### Incoming Non-legal Mail

"With regard to non-legal mail interference, the Second Circuit has held that the prisoner must allege specific incidents wherein the prisoner's 'ability to communicate with outsiders' was 'significantly impaired.'"  Vail v. Smith, No. 12CV234, 2013 WL 938025, at *4 (N.D.N.Y. Jan. 18, 2013), report and recommendation adopted, No. 12CV0234, 2013 WL 877469 (N.D.N.Y. Mar. 11, 2013) (citing Davidson v. Mann, 129 F.3d 700, 701-702 (2d Cir. 1997)).  Plaintiff alleges that he received opened non-legal mail on October 8, 2013, continued receiving opened mail thereafter, and received a personal letter on May 1, 2014 that was opened by mistake by a new officer who was unaware of the CORC order.  (Compl., ¶ II. D; Pl. Aff., at pgs. 6-8.)  However, he does not identify any specific incidents where his ability to communicate with outsiders was significantly impaired.

Accordingly, insofar as Plaintiff alleges a First Amendment violation for interference with his incoming non-legal mail, Plaintiff's claim is dismissed with leave to amend.[3]

---

[3] The Court expresses no opinion as to whether the policy of opening incoming non-legal mail for lock-down inmates might be justified by a legitimate penological concern.

Qualified Immunity

Defendants contend that Plaintiff's claims against Defendant Webb should be dismissed on the basis of qualified immunity.

Officers are protected from Section 1983 liability by qualified immunity if their actions (1) "did not violate clearly established rights of which a reasonable person would have known" or (2) "it was objectively reasonable to believe that [their] acts did not violate these clearly established rights". Cornejo v. Bell, 592 F.3d 121, 128 (2d Cir. 2010) (internal citation and quotation marks omitted). In determining whether a particular right was clearly established, courts look to: (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful. Bellezza, 2011 WL 2848141, at *7 (citing Jermosen v. Smith, 945 F.2d 547, 550 (2d Cir. 1991)).

"Qualified immunity is appropriately granted on a Rule 12(b)(6) motion [to dismiss for failure to state a claim] only if it is based on facts appearing on the face of the complaint, exhibits to the complaint, documents incorporated by reference, and items of which judicial notice may be taken." Biswas v. Kwait, 576 F. App'x 58 (2d Cir. 2014) (citing McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004) and Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993)).

As noted above, Plaintiff has stated sufficient facts to state a claim for violation of his right to the free flow of incoming legal mail. From the record at hand, it would be premature to hold at this stage that it was objectively reasonable for Defendant Webb to believe that her actions were justified based on a "legitimate penological interest other than mere general

security concerns which permit interference with regular mail." See Cancel, 2001 WL 303713, at *6. The Court notes that Defendant Webb's actions appear to deviate even from the prison policy as communicated to all inmates in the Inmate Handbook, which states, "[m]ail that you send out, and mail that is sent to you, may not be opened or read if you are not present, unless that is specifically allowed by a lawful search warrant." (Compl., at pg. 9.) See Bellezza, 2011 WL 2848141, at *8 (finding that right to receive mail absent reasonable prison regulation was well established for purposes of qualified immunity inquiry); Amaker v. Haponik, No. 98CV2663, 1999 WL 76798, at *8 (S.D.N.Y. Feb. 17, 1999) (same); see also Knight v. Keane, 247 F. Supp. 2d 379, 385 (S.D.N.Y. 2002) (denying qualified immunity defense at motion to dismiss stage where the record evidence was insufficient to establish that inspection of plaintiff's mail was based on good cause); Vail, 2013 WL 938025, at *5 ("Until a more fully developed record has been compiled, adjudging the reasonableness of Defendants' behavior in this case would simply be premature.").

Accordingly, Defendants' motion to dismiss Plaintiff's First Amendment claim in relation to incoming legal mail based on qualified immunity is denied without prejudice.

Municipal Liability

"A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). "[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Antrobus v. City of New York, No. 11CV2524, 2014 WL 1285648, at *5 (S.D.N.Y. Mar. 27, 2014) (citing Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007)).

Plaintiff has sufficiently alleged an official policy of interference with his incoming mail. When Plaintiff confronted Defendant Webb about his opened mail, she responded that she could open his mail "as long as [Plaintiff] was in lock up." (Compl., ¶ II. D.) Plaintiff's appeals to the IGRC[4] and the commanding officer[5] elicited similar responses, from which the existence of an official policy of interference with the mail of court-ordered lock-down inmates can plausibly be inferred.

Therefore, insofar as Plaintiff has sufficiently alleged a First Amendment violation in relation to incoming legal mail, Plaintiff has adequately stated a claim for municipal liability. Defendants' motion to dismiss Plaintiff's claim of interference with incoming mail against the City of New York for failure to state a claim for municipal liability is denied.

Relief Available

Plaintiff seeks $250,000 in monetary damages for "pain and suffering and the violations of [his] constitution[al] rights." (Compl., ¶ V.) Plaintiff alleges that the mail interference has caused him "a lot of grief, stress, depression, and sleep deprived nights," and left him in "a lot of pain [b]oth physically and mentally." Id.

The Prison Litigation Reform Act precludes plaintiffs from recovering damages "for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Plaintiff has not alleged facts indicating that he suffered any physical injury. See, e.g., Abreu v. Nicholls, No. 04CV7778, 2011 WL 1044373, at *3

---

[4]   "[A]s per MDC security, all mail for court ordered lock-down inmates is read in order to ensure that it is not violating the court order . . . ." (Compl., at pg. 11, IGRC Disposition Form.)

[5]   "Mail must be read to ensure that [it] is not from another inmate or violating a court order." (Compl., at pg. 6, Commanding Officer's Disposition Form.)

(S.D.N.Y. Mar. 22, 2011), report and recommendation adopted, No. 04CV7778, 2012 WL 1079985 (S.D.N.Y. Mar. 30, 2012) ("Numerous courts . . . have held that maladies . . . including depression, headaches, insomnia, and dizziness, do not constitute a 'physical injury' within the meaning of section 1997e(e) of the PLRA." (collecting cases)).  Accordingly, Plaintiff is barred from recovering damages for mental or emotional injuries.  In addition, to the extent that Plaintiff seeks punitive damages, Plaintiff is "precluded from recovering punitive damages from the City of New York under § 1983."  See Antrobus, 2014 WL 1285648, at *6 (citing City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981); Ciraolo v. City of New York, 216 F.3d 236, 242 (2d Cir. 2000)).  However, Section 1997e(e) "does not limit the availability of nominal damages for the violation of a constitutional right," or of punitive damages against Defendant Webb.  See Thompson v. Carter, 284 F.3d 411, 418 (2d Cir. 2002).  Therefore, Plaintiff's claim for punitive damages is dismissed as against the Defendant City only.

## CONCLUSION

For the foregoing reasons, the Court (i) grants Defendants' motion to dismiss Plaintiff's denial of access to the courts claim, without prejudice; (ii) grants Defendants' motion to dismiss Plaintiff's right to free-flowing mail claim with respect to outgoing mail, without prejudice; (iii) denies Defendants' motion to dismiss Plaintiff's right to free-flowing mail claim with respect to incoming legal mail;(iv) grants Defendants' motion to dismiss Plaintiff's First Amendment right to free-flowing mail claim with respect to incoming non-legal mail, without prejudice; and (v) strikes Plaintiff's claim for punitive damages against the City.  Plaintiff may file an Amended Complaint including additional facts in support of his access to the courts, outgoing mail, and incoming non-legal mail claims.  Any such Amended Complaint must be filed no later than **April 30, 2015**.  The Amended Complaint will replace the original Complaint

entirely, so Plaintiff must include all claims and all factual allegations that he wishes to pursue in this action.  A form on which he can file the Amended Complaint will be mailed to him with a copy of this Memorandum Opinion and Order.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

This Memorandum Order resolves docket entry number 19.

SO ORDERED.

Dated: New York, New York
       March 30, 2015

                                                    /s/ Laura Taylor Swain
                                                    LAURA TAYLOR SWAIN
                                                    United States District Judge

Copy mailed to:
Isaiah Smith, 441-10-06187
Manhattan Detention Center
125 White Street
New York, NY 10013